**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**DIANE S. CARUANA,**

                                **Plaintiff,**

             **-v-**                                                    **19-CV-733JLS(Sr)**

**NEW YORK STATE DEPARTMENT OF**
**CORRECTIONS AND COMMUNITY**
**SUPERVISION,**

                                **Defendant.**

_____

**REPORT, RECOMMENDATION AND ORDER**

             This case was referred to the undersigned by the Hon. John L. Sinatra,

pursuant to 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon

dispositive motions. Dkt. #5.


             Currently before the Court is defendant's motion to dismiss plaintiff's

complaint. Dkt. #4. For the following reasons, it is recommended that defendant's

motion be granted.


                                BACKGROUND

             Plaintiff secured a part-time position as a Recreation Program Leader 1 at

the Collins Correctional Facility commencing August 2, 2007. Dkt. #1, ¶ 14. Plaintiff

requested a rate increase every year beginning with her initial yearly evaluation in 2008,

but did not receive any step increases to her salary until January 7, 2016. Dkt. #1,

¶¶ 14-15. Plaintiff was aware that another part-time female employee at Collins

Correctional Facility had received step increases and that two part-time male employees in her job title at Gowanda Correctional Facility had received step increases while she did not. Dkt. #1, ¶¶ 16, 19 & 22. Payroll Examiner Brenda Greis responded to plaintiff's inquiries by informing plaintiff that she was unable to alter an individual salary without authorization and that plaintiff's supervisors had never spoken to her about or otherwise authorized any step increases for plaintiff. Dkt. #1, ¶ 16. Plaintiff raised the issue with her facility Supervisor/Union president, who informed plaintiff that he was unaware of any procedure that would allow him to request step increases for plaintiff. Dkt. #1, ¶ 17.

When plaintiff received the appropriate salary adjustment on January 7, 2016, it was retroactive for nine pay periods. Dkt. #1, ¶ 15. Ms. Greis explained to plaintiff that a request for  retroactive pay beyond nine pay periods would cause repercussions and require an investigation into the circumstances prompting a request for such relief. Dkt. #1, ¶ 21. Plaintiff made a formal complaint of discrimination with her employer on August 2, 2017, but was denied restitution for her lost wages. Dklt. #1, ¶ 24.

Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), on May 22, 2018. Dkt. #1, ¶ 7. The NYSDHR issued a Determination and Order After Investigation finding No Probable Cause on November 16, 2018 and, upon request for review, the Equal Employment Opportunity Commission ("EEOC"), issued a Dismissal not Notice of Rights dated March 8, 2019. Dkt. #1.

Plaintiff commenced this action on June 5, 2019, alleging disparate treatment based on gender and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Dkt. #1.

## DISCUSSION AND ANALYSIS

Defendant moves to dismiss the complaint as time barred because plaintiff failed to file a complaint with the NYSDHR until May 22, 2018, more than 866 days after her January 7, 2016 salary adjustment. Dkt. #4-1, p.2. In any event, defendant argues that plaintiff fails to plausibly allege that the failure to award her step increases or pay her correct salary retroactively for more than nine pay periods was because of her gender. Dkt. #4-1, pp.2-3. Furthermore, defendant argues that plaintiff has not plausibly alleged that she engaged in protected activity or that the denial of retroactive compensation beyond nine pay periods was because of any such activity. Dkt. #4-1, pp.15-16.

Plaintiff responds that she has plausibly alleged that she suffered disparate treatment with respect to pay as compared to her male colleagues. Dkt. #7, p.6. Plaintiff cites to her continued requests for retroactive compensation beyond nine pay periods as  relevant dates to measure timeliness, but concedes that she received her increased pay for at least two years before her complaint to the NYSDHR and "cannot recover on that claim." Dkt. #7, p.7. With respect to her retaliation claim, plaintiff argues that she repeatedly complained to her immediate supervisors and to the Deputy Superintendent of the Collins facility about her disparate pay scale, but still denied her full back pay. Dkt. #7, pp.7-9.

Defendant replies that plaintiff cannot continue to seek back pay after conceding her cause of action for disparate treatment is time barred. Dkt. #8, pp.2-3 & 5-6. In any event, defendant replies that plaintiff has failed to plausibly allege that the denial of more than nine pay periods of back pay was because of gender. Dkt. #8, p.4. To the contrary, defendant notes that plaintiff acknowledges that the New York State Comptroller would only allow back pay for nine pay periods. Dkt. #8, p.4. Defendant also argues that plaintiff has not alleged that any other employee was treated differently with respect to back pay. Dkt. #8, p.5. Defendant replies that plaintiff cannot rely upon the filing of the internal complaint in 2017 or the filing of the NYSDHR complaint in 2018 as protected activity because defendant had declined to award plaintiff more than nine pay periods of retroactive back pay prior to either of these actions by plaintiff. Dkt. #8, pp.7-9.

Plaintiff filed a sur-reply arguing that male employees performing the same position were paid more than she was and that her supervisor admitted that her claim for back pay was "real, but . . . did nothing about it." Dkt. #10, p.6.

*Dismissal Standard*

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In the context of employment discrimination, the complaint need not contain specific facts to establish a *prima facie* case of discrimination, but must allege enough facts to state a claim to relief that is plausible on its face. *Allessi*, 16 F. Supp.3d at 226-27. "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Connecticut Gen. Life Ins. Co. v. BioHealth Labs., Inc*., 988 F.3d 127, 131-32 (2d Cir. 2021) (internal quotations omitted).

### Exhaustion of Administrative Remedies

As a precondition to bringing  a Title VII suit in federal court, a plaintiff in New York must first pursue administrative remedies with the EEOC by filing a timely complaint within 300 days of an unlawful employment practice. *Yu v. City of New York*, 792 Fed. App'x 117, 118 (2d Cir. 2020), *citing* 42 U.S.C. § 2000e-5(e)(1). The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period. *Russell v. County of Nassau*, 696 F. Supp.2d 213, 226 (E.D.N.Y. 2010).

Title VII makes it unlawful for an employer to discriminate against an employee with respect to compensation because of the employee's sex. *Lenzi v.*

*Systemax, Inc.*, 944 F.3d 97, 108 (2d Cir. 2019), *citing* 42 U.S.C. § 200e-2(a)(1). Title

VII also makes it an unlawful employment practice for an employer to discriminate

against an employee because the employee has opposed any unlawful employment

practice. *Id.* at 112, *citing* 42 U.S.C. § 200e-3(a).  With respect to claims of

discrimination in compensation, an unlawful employment practice occurs: (1) when a

discriminatory compensation decision or other practice is adopted; (2) when an

individual becomes subject to a discriminatory compensation decision or other practice;

or (3) when an individual is affected by application of a discriminatory compensation

decision or other practice, including each time wages, benefits, or other compensation

is paid. 42 U.S.C. § 2000e-5(e)(3)(A). Thus, a Title VII claim alleging discriminatory pay

accrues not only at the time of the discriminatory decision, but also with each paycheck

received. *Whitt v. Kaleida Health,* 298 F. Supp.3d 558, 573 (W.D.N.Y. 2018)*, quoting*

*Davis v. Bombardier Transp. Holdings (USA) Inc*., 794 F.3d 266, 271 (2d Cir. 2015).


    Given that plaintiff filed her complaint with the NYSDHR on May 22, 2018,

she would be barred from challenging any unlawful employment practice which

occurred prior to July 26, 2017. Because plaintiff's complaint is clear that she began to

receive the appropriate salary effective January 7, 2016, her claim of discriminatory

compensation is untimely. Plaintiff's retaliation claim is also untimely. She cannot

circumvent the deadline for exhausting administrative remedies by characterizing

deficient paychecks between 2008 and 2015 as back pay owed and claiming that the

denial of such back pay was in retaliation for complaining about the decision to deny

her back pay. Thus, under any theory of liability, plaintiff's complaint about the lack of step increases and the loss of salary that resulted from that lack of step increases is barred by the plaintiff's failure to file a timely complaint with the EEOC.

<u>CONCLUSION</u>

For the foregoing reasons, it is recommended that defendant's motion to dismiss plaintiff's complaint (Dkt. #4), be granted.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an</u>
<u>extension of such time waives the right to appeal the District Court's Order</u>. *Thomas v.*
*Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*,
838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules
for the Western District of New York, "written objections shall specifically identify the
portions of the proposed findings and recommendations to which objection is made and
the basis for such objection and shall be supported by legal authority." <u>Failure to</u>
<u>comply with the provisions of Rule 72(b) may result in the District Judge's refusal to</u>
<u>consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report,
Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:      Buffalo, New York
            January 14, 2022

                        <u>  s/ H. Kenneth Schroeder, Jr.  </u>
                        **H. KENNETH SCHROEDER, JR.**
                        **United States Magistrate Judge**

-8-